## UNITED STATES *v.* COHN.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 130.   Submitted January 13, 1926.—Decided March 1, 1926.

1. Obtaining the possession of non-dutiable goods from a collector is not obtaining the approval of a " claim upon or against " the Government, within the meaning of § 65 of the Penal Code, as amended October 23, 1918.   P. 345.
2. Neither is the wrongful obtaining of such goods from a collector a " defrauding " of the Government within the meeting of this section, since it deals with defrauding only in the primary sense of cheating out of property or money; therein differing from § 37, which extends to conspiracies to defraud in the secondary sense of obstructing governmental functions by fraudulent means. P. 346.

Affirmed.

ERROR to a judgment of the District Court sustaining a demurrer to an indictment.

*Solicitor General Mitchell* and *Assistant to the Attorney General Donovan* were on the brief, for the United States.

Under the facts as set forth in the indictment, the defendant was not entitled to make entry.

Section 35 of the Penal Code, properly construed, applies to the fraud in this case. In the absence of decisions construing this section, we may properly resort to de-

cisions under § 37, penalizing conspiracies to defraud the Government, which extends to all deceitful practices for procuring official action not warranted by law or regulations. *United States* v. *Plyler,* 222 U. S. 15; *Haas* v. *Henkel,* 216 U. S. 462; *United States* v. *Barnow,* 239 U. S. 74; *United States* v. *Foster,* 233 U. S. 515; *Wolf* v. *United States,* 283 Fed. 885; *United States* v. *Brokerage Co.,* 262 Fed. 459; *United States* v. *Fung Sam Wing,* 254 Fed. 500; *Curley* v. *United States,* 130 Fed. 1; *Hammerschmidt* v. *United States,* 265 U. S. 182.

The possession of valuable goods has been surrendered. It makes no difference that the ultimate title was not in the Collector or in the United States, or that the goods were entitled to entry as "free goods" without the payment of duty, under Art. 192 of the Customs Regulations of 1915. They were none the less required to be entered, and the Collector was entitled to custody of them in the orderly administration of the revenue laws. Of that possession he has been deprived by "deceit, craft, or trickery." It is submitted that, under every test known to the law, a fraud has been perpetrated, and that it is properly punishable under § 35 of the Penal Code.

Section 35 of the Penal Code, as amended, is no longer restricted to frauds committed in the presentation of "claims" against the Government, but, by the amendment of 1918, the scope of the section was materially widened; and the element of a "claim" is no longer essential. The section punishes the concealment or misrepresentation of material facts whenever the defendant's purpose is to obtain the payment or approval of a claim, or to cheat and swindle or defraud the United States or any department thereof. Even if the element of a "claim" is held necessary to establish a case, that element is here present. Bouvier L. Dict. Vol. 1, p. 332; Co. Litt. 291b; *Prigg* v. *Pennsylvania,* 16 Pet. 539; *Cornell* v. *Travellers' Insurance Co.,* 175 N. Y. 239. It

has repeatedly been held that offenses which involve the "presenting of false claims against the United States" are not confined to claims for money alone, or to matters over which the Court of Claims might have jurisdiction. *United States* v. *Davis,* 231 U. S. 183; *United States* v. *Spalding,* 3 Dak. 85; *United States* v. *Bickford,* Fed. Cas. No. 14591; *United States* v. *Wilcox,* Fed. Cas. No. 16691.

*Messrs. Benjamin P. Epstein* and *Bernhardt Frank* were on the brief, for defendant in error.

MR. JUSTICE SANFORD delivered the opinion of the Court.

Cohn, the defendant in error, was indicted in the District Court for a violation of § 35 of the Penal Code, as amended by the Act of October 23, 1918, c. 194, 40 Stat. 1015. This entire section is set forth in the margin.[1]

---

[1] " Sec. 35. Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry; or whoever shall take and carry away or take for his own use, or for the use of another, with intent to steal or purloin, any personal property of the United States, or any branch or department thereof, or any corporation in

The indictment was dismissed, on demurrer, upon the ground that the statute did not make the matters charged a crime against the United States.[2] This writ of error was then allowed by the District Judge under the provision of

which the United States of America is a stockholder; or whoever shall enter into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim; and whoever, having charge, possession, custody, or control of any money or other public property used or to be used in the military or naval service, with intent to defraud the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, or willfully to conceal such money or other property, shall deliver or cause to be delivered to any person having authority to receive the same any amount of such money or other property less than that for which he received a certificate or took a receipt; or whoever, being authorized to make or deliver any certificate, voucher, receipt, or other paper certifying the receipt of arms, ammunition, provisions, clothing, or other property so used or to be used, shall make or deliver the same to any other person without a full knowledge of the truth of the facts stated therein and with intent to defraud the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. And whoever shall purchase, or receive in pledge, from any person any arms, equipment, ammunition, clothing, military stores, or other property furnished by the United States, under a clothing allowance or otherwise, to any soldier, sailor, officer, cadet, or midshipman in the military or naval service of the United States or of the National Guard or Naval Militia, or to any person accompanying, serving, or retained with the land or naval forces and subject to military or naval law, having knowledge or reason to believe that the property has been taken from the possession of the United States or furnished by the United States under such allowance, shall be fined not more than $500 or imprisoned not more than two years, or both."

[2] This appears from a certificate filed by the District Judge after the entry of the judgment and before the allowance of the writ of error.

the Criminal Appeals Act,[3] permitting the United States a direct writ of error from a judgment sustaining a demurrer to an indictment, based upon the construction of the statute upon which the indictment is founded. *United States* v. *Patten,* 226 U. S. 525, 535.

The statute provides, *inter alia,* that: Whoever "for the purpose of obtaining or aiding to obtain the payment or approval of" any "claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder," or "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof," or any such corporation, "shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations or make or use or cause to be made or used any false bill, receipt, voucher," etc., shall be punishable by fine or imprisonment, or both.

The indictment charged that Cohn, for the purpose of obtaining the approval of a claim against the Government and the Treasury Department to the possession of imported merchandise, and for the purpose and with the intent of defrauding the Government and the Treasury Department through a perversion and obstruction of the custom-house function and of the proper and orderly administration of the laws of the United States and the regulations of the Department, had concealed and covered up material facts by a trick, scheme or device, and had knowingly caused false and fraudulent statements to be made, as follows:

In October, 1920, a certain lot of cigars arrived at Chicago from the Philippine Islands for entry at the custom-house, and came into the possession of the col-

---

[3]Act of March 2, 1907, c. 2564, 34 Stat. 1246.

lector of customs. They were consigned to order " notify
Cohn Bros. Cigar Co.," the name under which Cohn con-
ducted his business. The next day, a Chicago Bank re-
ceived from a Philippine Bank a bill of lading covering the
cigars, indorsed in blank by the consignor, with an at-
tached draft drawn by the consignor upon the Cigar Co.,
and instructions to deliver the bill of lading only upon
payment of the draft. Two days later, the draft not
having been paid, Cohn, knowing these facts, fraudulently
procured certain custom-house brokers to make entry of
the cigars and obtain possession of them from the collector
by giving a bond for the production of the bill of lading.
The possession of the cigars was thus secured by Cohn
upon false and fraudulent statements and representations
made by him to the brokers, and through them, as his
innocent agents, to the collector, that the bill of lading
had not arrived in Chicago and that he was entitled to the
entry and possession of the cigars, and the fraudulent con-
cealment by him from the brokers and the collector of
the material facts that the bill of lading and attached
draft had arrived in Chicago, with the condition stated,
and that the draft had not then been paid; thereby induc-
ing the collector to deliver the possession of the cigars,
when he " would and should have refused so to do " if he
had known these facts and that Cohn consequently had
no right to make the entry or obtain possession of the
cigars.

While the cigars were admissible into the United States
free of duty, the Customs Regulations nevertheless re-
quired that they should be entered at the custom-house.
Arts. 192, 215. The Regulations also provided that a bill
of lading was necessary to establish the right to make the
entry, Art. 219; that merchandise consigned to order
should be deemed the property of the holder of a bill of
lading indorsed by the consignor, Art. 219;[4] that such

---

[4] This Regulation embodied a provision in Sec. III, B of the Tariff
Act of 1913, c. 16, 38 Stat. 114, 181.

holder might make the entry, Art. 220; and, further, that the collector might in his discretion permit entry to be made without the production of the bill of lading, on a bond conditioned for its subsequent production and indemnifying him against any loss or damage which might be sustained by reason of such permission. *Customs Regulations of 1915,* pp. 126, 138, 140.

We may assume, without deciding, that under these Regulations Cohn was not entitled to enter and obtain possession of the cigars until he had paid the draft and become the holder of the bill of lading. But even so, the acts by which the possession of the cigars were obtained did not constitute an offense against the United States unless done for one or other of the purposes entering into the statutory definition of the offense and charged in the indictment, that is, either for the purpose of obtaining the approval of a " claim upon or against " the Government or for the purpose of " defrauding " the Government. It is contended by the United States that, although the cigars were duty free, the facts alleged in the indictment show that their possession was wrongfully obtained for both of these purposes. We cannot sustain this contention in either of its aspects.

Obtaining the possession of non-dutiable merchandise from a collector is not obtaining the approval of a " claim upon or against " the Government, within the meaning of the statute. While the word " claim " may sometimes be used in the broad juridical sense of " a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty," *Prigg* v. *Pennsylvania,* 16 Pet. 539, 615, it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a " claim upon or against " the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Gov-

ernment, based upon the Government's own liability to the claimant. And obviously it does not include an application for the entry and delivery of non-dutiable merchandise, as to which no claim is asserted against the Government, to which the Government makes no claim, and which is merely in the temporary possession of an agent of the Government for delivery to the person who may be entitled to its possession. This is not the assertion of a " claim upon or against " the Government, within the meaning of the statute; and the delivery of the possession is not the " approval " of such a claim.

Neither is the wrongful obtaining of possession of such non-dutiable merchandise a " defrauding " of the Government within the meaning of the statute. It is contended by the United States that, by analogy to the decisions in *Haas* v. *Henkel,* 216 U. S. 462, 479, and *Hammerschmidt* v. *United States,* 265 U. S. 182, 188, and other cases involving the construction of § 37 of the Penal Code relating to conspiracies to defraud the United States, the word " defrauding " in the present statute should be construed as being used not merely in its primary sense of cheating the Government out of property or money, but also in the secondary sense of interfering with or obstructing one of its lawful governmental functions by deceitful and fraudulent means. The language of the two statutes is, however, so essentially different as to destroy the weight of the supposed analogy. Section 37, by its specific terms, extends broadly to every conspiracy " to defraud the United States in any manner and for any purpose," with no words of limitation whatsoever, and no limitation that can be implied from the context. Section 35, on the other hand, has no words extending the meaning of the word " defrauding " beyond its usual and primary sense. On the contrary it is used in connection with the words " cheating or swindling," indicating that it is to be construed in the manner in which those words are ordinarily

used, as relating to the fraudulent causing of pecuniary or property loss. And this meaning is emphasized by other provisions of the section in which the word "defraud" is used in reference to the obtaining of money or other property from the Government by false claims, vouchers and the like; and by the context of the entire section, which deals with the wrongful obtaining of money and other property of the Government, with no reference to the impairment or obstruction of its governmental functions.

We hence conclude that the indictment did not show, within the meaning of § 35 of the Penal Code, either the purpose of obtaining the approval of a "claim upon, or against" the United States and the Treasury Department, or the purpose and intent of "defrauding" them. The demurrer was rightly sustained; and the judgment of the District Court is

*Affirmed.*