**UNITED STATES of America,
Appellant,**

v.

**Martin TIEGER.**

**No. 11591.**

United States Court of Appeals
Third Circuit.

Argued Nov. 14, 1955.

Decided June 14, 1956.

Anthony L. Mondello, Washington, D. C. (Geo. S. Leonard, Acting Asst. Atty. Gen., Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Melvin Richter, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Samuel Voltaggio, Newark, N. J., for appellee.

Before BIGGS, Chief Judge, and KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

On motion, the district court dismissed for failure to state a cause of action [1] certain counts of a complaint wherein the United States sued defendant Tieger for a statutory civil penalty under the False Claims Act. R.S. §§ 3490, 5438, 31 U.S.

1. As authorized by Rule 12(b) (6), Fed.Rules Civ.Proc., 28 U.S.C.

C. § 231. This appeal [2] requires decision whether that which Tieger is alleged to have done is a violation of the False Claims Act.

Tieger is a realtor who, to enable his clients to borrow money needed for down payments on the purchase of property, is alleged to have misrepresented the proposed transactions as improvement loans on structures already owned by the borrowers. Each count is based upon a loan obtained by one of Tieger's clients from a private lending institution and insured routinely by the United States as a property improvement loan, insurable under Title I of the Federal Housing Act.[3]

The essence of the complaint is that the United States was induced to guarantee repayment of the loan, thus changing its legal position detrimentally, by willfully false representations concerning the circumstances of the borrower and the intended use of the money, submitted by Tieger as part of the loan application with the intention that the United States, as well as the lender, should rely upon them. However, in each case, the loan was repaid in full by the borrower so that no claim was made upon the United States as guarantor.

■ In these circumstances the government contends that Tieger is liable under the following provision of the False Claims Act:

"Any person * * * who shall * * * cause to be presented, for payment or approval * * * any claim upon or against the * * * United States * * *, knowing such claim to be · * * * fraudulent, or who, for the purpose of obtaining * * * the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * *." 31 U.S.C. § 231.

Only the statutory penalty is claimed, it being admitted that the United States has suffered no loss.[4]

It will be observed that this section covers both the presentation of a fraudulent "claim" against the United States for "payment or approval" and the use of false supporting documents to obtain "the payment or approval of such claim." The latter alternative seems more nearly applicable to the present facts. Accordingly, we will treat this as a case in which the defendant is charged with using a "false * * * certificate" in order "to obtain the payment or approval" of a "claim upon or against the * * * United States."

[2, 3] But whatever combination of words may seem most favorable to the government, the statute can apply to this case only if the government's contractual undertaking to repay a private bank loan if the borrower should default, itself constituted the "payment or approval" of a "claim against the * * * United States." We think this is a fair and accurate statement of the government's

---

2. Judgment was entered on 5 of 7 counts and appeal taken in accordance with Rule 54(b), Fed.Rules Civ.Proc., 28 U.S.C.

3. Since 1934, Title I of the National Housing Act, 48 Stat. 1246, 12 U.S.C.A. 1701 et seq., has authorized the Federal Housing Administrator to insure qualified lending institutions against losses on certain types of real property improvement loans. In practice an institution first qualifies with the administrator and receives a general undertaking of the government to make good any losses on a certain category of business up to a stated maximum. When the institution makes a particular loan, it submits all required data on the transaction to the administrator who, if the transaction is in order, then acknowledges it for insurance and makes the appropriate charge against the institution for this protection.

4. This court has recognized that a false claim may be actionable though in the given case the government has not been injured by its assertion. United States v. Rohleder, 3 Cir., 1946, 157 F.2d 126.

legal problem. At the same time it reveals the inherent difficulty and weakness of the position the government has to take. For the conception of a claim against the government normally connotes a demand for money or for some transfer of public property. Believing that connotation applies here, we shall affirm the judgment below simply on the ground that when Congress legislated against fraud in connection with the "payment or approval" of "any claim upon or against the * * * United States" it did not cover fraud in inducing the United States to make a guarantor's promise, performance of which was conditioned upon an event which never occurred. True, the contract Tieger induced might have led to what would undoubtedly be considered a claim against the United States, but it never did.[5] And certainly, there is no indication that Tieger intended or even anticipated any default by the borrower and consequent claim on the guarantor.

Actually, the alleged claim against the United States here is no more than the privilege of the lending bank, in such a case as the loan application falsely represented this to be, to negotiate a unilateral contract under which the bank pays a modest consideration and receives in return the promise of the United States to make good if a borrower shall default. It is possible to view this commercially advantageous privilege of exchanging a little money for such an aleatory promise as a claim. But this privilege of contracting certainly is not a claim in normal business or legal usage and terminology. For familiar example, a policy of life insurance often accords the owner during the life of the insured a privilege of converting the policy into a new and different contract. It seems as strange to describe the exercise of this privilege of contracting as a claim, as it is normal so to denominate an application for the sum payable upon the death of the insured.

Both the legislative history[6] and certain language[7] of the False Claims Act point to the soundness of the construction which thus restricts "claim * * * against the * * * United States" to this conventional meaning of demand for money or property. But resort to these is unnecessary because the Supreme Court has so clearly stated its view of the matter.

5. Contrast United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, where the gravamen of the offense was not merely inducing the United States to enter into a contract pursuant to collusive bidding, but, beyond that, the development of the transaction to the point where the government could be and was confronted with a demand for payment in performance of the contract.

6. See the Senate debate, Cong.Globe, 1863, 37th Cong., 3d Sess. 952–8 and the House Report, H.R.Rep. No. 2, 37th Cong., 2d Sess., which preceded the passage of the original Act of March 2, 1863, C. 67, 12 Stat. 696, from which the presently questioned language of the False Claims Act is derived. This legislation during the grimmest days of the Civil War was the aftermath of great scandal in military procurement and a legislative investigation which had confirmed charges of widespread and corrupt profiteering in the acquisition and disposition of supplies and material, including much rather informal transaction of business in and with field commands. The submission of false bills and vouchers to support the payment of money and other transfer of property was a characteristic means of perpetrating such wrongs. So, in drafting remedial legislation Congress used language descriptive of this kind of cheating. For brief discussions of the statutory history, see United States ex rel. Marcus v. Hess, 3 Cir., 1942, 127 F.2d 233, 235–236; Note, 1956, 69 Harv.L.Rev. 1106, 1107.

7. The "claim" must be presented for "payment or approval." This describes the usual procedure in making a demand for money or property but is not an apt characterization of what is done in calling upon another to enter into a contract.

The enumeration of false tokens supporting false claims specifies "any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition." Here too the types of token are those which normally support a demand for money or property but are unusual where the making of a contract is the transaction in view.

United States v. Cohn, 1926, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616, was a criminal prosecution in which one of the charges was the violation of the very provision now in suit, which then was effectuated and enforcible by a criminal as well as a civil sanction.[8] Referring to this provision the court explicitly considered whether the conduct of the defendant amounted to "obtaining the approval of a 'claim upon or against' the Government, within the meaning of the statute [False Claims Act]." It then construed the decisive language of the statute, saying: "While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539, 615 (10 L.Ed. 1060), it is clear in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant." 270 U.S. at 345–346, 46 S.Ct. at page 252.

Seeking to minimize the force of this construction the government calls it "dictum", meaning, apparently, that this construction was more restrictive than the exigencies of the case required. But, to an inferior federal court, such a plain statement of a statute's meaning, adopted by the Supreme Court as the basis of its decision is much more than "dictum", however apparent it may seem to analysts that the court could have gone on a narrower ground, had it chosen to do so.

The district court correctly concluded that the statute deals only with false claims upon the government for money or property and that no such claim is revealed in the counts which have been dismissed.

The judgment will be affirmed.

BIGGS, Chief Judge (dissenting).

The defendant, Tieger, a real estate dealer, on seven occasions between October 27, 1947 and January 29, 1948, caused loan credit applications to be presented to the General Union Mortgage Company of Newark, New Jersey. Each application was made on a government form designated as "FHA Title I Credit Application (Property Improvement Loan)." Alleging that Tieger caused credit to be obtained by these applications and that pertinent statements contained in them were false, the United States brought a civil action against him in the court below, basing its complaint upon the provisions of R.S. §§ 3490 and 5438, 31 U.S.C.A. § 231, the False Claims Act. The complaint contains seven counts. Tieger moved to dismiss on the ground that the complaint failed to state a cause of action. The court below granted the motion as to Counts 1 to 5 inclusive but denied it as to Counts 6 and 7, entering final judgment on the first five counts.[1] Rule 12(b) (6), F.R.C.P., 28 U.S.C. The United States has appealed. We are concerned here only with the question as to whether the first five counts state a cause of action on which the United States may recover.

For the purposes of the appeal, the allegations contained in these counts must be taken to be true. The first count is typical. It alleges that General Union Mortgage Company was a New Jersey corporation with offices in Newark, New Jersey, a financial institution qualified and eligible for credit insurance against losses sustained by it as a result of loans

---

8. The basic language of the False Claims Act and the supporting criminal sanction then in force appeared in Section 35 of the Penal Code, as amended by the Act of October 23, 1918, C. 194, 40 Stat. 1015.

The analogous present criminal sanctions appear in 18 U.S.C. §§ 286, 287.

1. The court stated that there was no just reason for delay in entering final judgment as to these counts, in accordance with Rule 54(b), F.R.C.P., 28 U.S.C.

and advances of credit and purchases of obligations representing loans and advances of credit for the purpose of financing alterations, repairs, and improvements of existing structures, and was so authorized and empowered by the Federal Housing Administrator; that on or about December 22, 1947, in Newark, Tieger, for the purpose of obtaining from the Mortgage Company a loan and advances of credit in the sum of $1500 for one Witalis and his wife, caused to be presented to the Mortgage Company an application signed by Witalis and his wife containing false statements, known to Tieger to be false, namely, that the loans would be used to make improvements on a certain property owned by Witalis when in fact Witalis did not own that property but intended to, and in fact did, use the loan as a down payment on the property; and that the Mortgage Company issued a check payable to the order of Witalis in the amount of $1500 in reliance upon the false statements made in the credit application, receiving as security for the loan a negotiable promissory note of Witalis and his wife payable to the Mortgage Company. The count further alleges that the Mortgage Company negotiated the promissory note to First Bancredit Corporation of St. Paul, Minnesota, and that the Witalis note was submitted to the Federal Housing Administrator by First Bancredit Corporation and accepted by the Administrator for insurance on December 26, 1947, in reliance on a loan report submitted by First Bancredit Corporation. The count demands judgment for the United States

against Tieger in the sum of $2,000 because of this "fraudulent claim." It is not alleged that the United States suffered any loss by reason of the false statements in the application. Indeed, the trial court stated in its opinion that " * * * it is conceded that the loans were repaid."

The court below based its judgment in favor of Tieger on its interpretation of the term "claim" as contained in R.S. §§ 3490 and 5438, 31 U.S.C.A. § 231, set out below.[2] The court said: "The term 'claim,' in its common acceptance, denotes a demand for money or property as of right" citing, *inter alia*, Hobbs v. McLean, 1886, 117 U.S. 567, 575, 6 S.Ct. 870, 29 L.Ed. 940, and pointing out that in its view the counts contained no allegation that any "demands" were ever made upon the United States or any of its agencies and that in fact the repayment of the loans precluded such demands. The United States contends that it is not necessary for the government to make an actual payment of money in order to subject a claimant to liability under the False Claims Act and that liability attaches immediately upon the claimant's making an application. The United States also argues that the word "claim" in the statute goes further than a simple demand for the immediate payment of money and encompasses "all conduct seeking the approval by the Government of claims or assertions as of right to action by the Government affecting its money or property, or the adjustment of the claimed right as between the Government and the applicant."[3] Here what was obtain-

2. The statute states: "Any person * *, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, * * * service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or depo-

sition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the cost of suit; and such forfeiture and damages shall be sued for in the same suit." All the counts with which we are concerned claim only the statutory amount of $2,000.

3. Appellant's brief, p. 7.

ed by Witalis and the other applicants aided by Tieger was the pledging of the credit of the United States to insure their loans.[4] There can be no doubt of this as a fact, assuming the allegations of the five counts to be true, as we must on this appeal.

How was the "claim," assuming *arguendo* that it be such, made? Since Count 1 is typical it may be employed for this purpose. Title I of the National Housing Act, 48 Stat. 1246, 12 U.S.C.A. § 1702 sets up the Federal Housing Administration. Section 1703(a) empowers the Administrator to insure banks, trust companies, mortgage companies and other financial institutions, which the Administrator finds to be qualified and eligible for the purpose of financing alterations, repairs and improvements to existing structures and for the building of new buildings, in amounts not exceeding 10% of the total amount of the loans made by the qualified institutions. Section 1703(f) provides that the Administrator shall fix a premium charge for the insurance, which charges when paid are to be deposited in an account in the Treasury of the United States. The Mortgage Company in the instant case was an institution qualified for the making of loans as provided by the National Housing Act and was entitled to insurance by the United States as provided by the Act. When Tieger caused the Witalis application to be presented to the Mortgage Company, he set into motion the machinery whereby the loan made to Witalis could be insured by the credit of the United States. When the loan was made by the Mortgage Company and the mortgage was given to that company, the credit of the United States became pledged by way of security against loss on the loan in the manner provided by the statute. See again the provisions of Section 1703. The credit of the United States was thus sought and was thus pledged.

I can find no substance in the District Court's statement that repayment of the loans precluded the existence of any "claim." It is not necessary that the government suffer pecuniary loss. This very term of court an unanimous Supreme Court stated: "The case of United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, involved a provision of the False Claims Act, R.S. §§ 5438, 3490, 31 U.S.C. § 231, 31 U.S.C.A. § 231, essentially the equivalent of § 26(b) (1) [of the Surplus Property Act of 1944, 58 Stat. 765, 780, 50 U.S.C.A. § 1635, involved in the present case]. * * * It is insisted * * * that the failure of the Government to allege specific damages precludes recovery here. But there is no requirement, statutory or judicial, that specific damages be shown, and this was recognized by the Court in Marcus." Rex Trailer Co. v. United States, 1956, 350 U.S. 148, 152–153, 76 S.Ct. 219, 221. See also our own decision in United States v. Rohleder, 3 Cir., 1946, 157 F.2d 126, at page 129.

To come now to the more basic question presented by this appeal: Is a property improvement loan application which is to be insured under the National Housing Act a "claim" against the United States within the meaning of the False Claims Act? The statute was enacted by Congress on March 2, 1863, 12 Stat. 698. Although there have been many subsequent modifications and amendments, these are in fact irrelevant to the issue before us, for the law has remained substantially intact in all relevant particulars up to the present time. Its literal language leads me to the conclusion that Witalis' and Tieger's acts fall within its terms. Tieger caused to be "presented" for "approval" a claim for the credit of the United States and obtained the "approval" for "payment," if payment became necessary, of "such [a] claim" by the use of a "false claim" for credit. Tieger caused to be presented for

---

4. The complaint alleges that the various borrowers in fact used the property improvement loans to make down payments on the properties in question. Tieger's real estate business apparently benefited from additional sales as a result thereof.

approval to the Mortgage Company a "claim" for insurance.

The statute is not penal but civil in nature. United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 548–552, 63 S. Ct. 379, 87 L.Ed. 443. Cf. Rex Trailer Co. v. United States, 1956, 350 U.S. 148, 76 S.Ct. 219. "[W]e must give it the fair meaning of its intendment." United States ex rel. Marcus v. Hess, supra, 317 U.S. at page 542, 63 S.Ct. at page 383. I do not think that this court, the court below or the appellee have done so. Hobbs v. McClean, 1886, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940, and Milliken v. Barrow, C.C.E.D.La.1895, 65 F. 888, relied upon by the district court, concern the word "claim" in another statute with a wholly different purpose. Many of the earlier decisions, which considered the statute "highly penal," have been discredited. See the discussion in United States ex rel. Rodriquez v. Weekly Publications, D.C.S.D.N.Y.1946, 68 F.Supp. 767. The court's conclusion in that case is borne out by the Supreme Court in Rex Trailer Co. v. United States, supra. The quotations in appellee's brief apparently limiting the meaning of the word "claim" in the False Claims Act to "a demand for money or property as of right" have been removed from their proper factual context.[5] In each instance, the Court was simply promulgating a broad definition which was sufficient to dispose of a factual situation far removed both from the usual type of claim and from the present case. In fact, there is language in United States v. Byron, D.C.D.Ore.1915, 223 F. 798, a decision cited both by the court below and by appellee, which seems to support the Government's contention. "A claim, within the meaning of this statute, is the demand of something from the United States on the ground of right, as the assertion of a right to the title, possession, or ownership of property, or *the affirming of a debt, obligation, or the like * * *.*" Id., 223 F. at page 800. (Emphasis added.) In the case at bar no money was paid, but a claim for the insurance of credit was presented and effected.

Another point remains, namely, the fact that the application was presented to the Mortgage Company rather than directly to the United States. The decision of the Supreme Court in United States ex rel. Marcus v. Hess, supra, conclusively disposes of this point in favor of the United States.

I would reverse the judgment and, for that reason, dissent.

5. In United States v. Cohn, 1926, 270 U.S. 339, 346, 46 S.Ct. 251, 253, 70 L.Ed. 616, the Court said with regard to whether the act committed there had constituted a "claim": "[O]bviously * * * [the word "claim"] does not include an application for the entry and delivery of non-dutiable merchandise, as to which no claim is asserted against the Government, to which the Government makes no claim, and which is merely in the temporary possession of an agent of the Government for delivery to the person who may be entitled to its possession." There the defendant had obtained delivery of a shipment of cigars without presenting the bill of lading, thereby attempting to avoid the necessity of paying a sight draft attached to the bill.

I cannot regard the ruling in the Cohn case as controlling here for the question presented here was not in focus therein, though the majority of this court feel that there is apt, if not controlling, *dicta* in the opinion.

In United States ex rel. Kessler v. Mercur Corp., D.C.S.D.N.Y.1935, 13 F. Supp. 742, 743, the Court stated, "The action may not be maintained where all that is alleged is that the defendant has made false statements as to his own property, as in an income tax return." Affirming, 2 Cir., 1936, 83 F.2d 178, the Second Circuit pointed out that the action involved a claim by the Government against Mercur for property withheld from the Government and not a false claim by Mercur against the Government.

Our own decision in United States ex rel. Marcus v. Hess, 3 Cir., 1942, 127 F. 2d 233, was, of course, reversed by the Supreme Court, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443.