UNITED STATES of America, Appellant,

v.

Harvey COCHRAN, Appellee.

No. 16027.

United States Court of Appeals Fifth Circuit.

June 30, 1956.

Rives, Circuit Judge, dissented.

William W. Ross, Atty., Dept. of Justice, Washington, D. C., Malcolm R. Wilkey, U. S. Atty., Gordon J. Kroll, Asst. U. S. Atty., Houston, Texas, Paul A. Sweeney, Chief, Appellate Sec., Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Melvin Richter, Atty., Dept. of Justice, Washington, D. C., for appellant.

Sam R. Merrill, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

The appellant, United States, sought to recover from the appellee, Cochran, $12,000.00 for causing to be presented for approval to the Federal Housing Administration six claims upon the Government of the United States, knowing such claims to be false, fictitious or fraudulent, in violation of the False Claims Act, 31 U.S.C.A. § 231.[1]

The facts were stipulated,[2] and, plaintiff and defendant moving for summary judgment, the district judge filed findings of fact and conclusions of law, in which, correctly saying: "It is not every attempted fraud against the gov-

---

1. As pertinent here, the act provides:
    "Any person . * * * who shall * * cause to be presented, for payment or approval, * * * any claim upon or against the * * * United States * * *, knowing such claim to be * * fraudulent, or who, for the purpose of obtaining * * * the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent

or fictitious statement or entry, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * *." 31 U.S.C.A. § 231.

2. "At various times during the period Aug. 1, 1951, to about Mar. 24, 1953, the defendant applied for and borrowed from the following named banks or credit institutions, on the date indicated, certain sums of money and executed notes therefor as follows:

| "Name of Bank: | Amount of Note | Date |
| --- | --- | --- |
| "(a) Merchants and employees Industrial Bank, Houston, Tex. | $ 800.00 | 8–1–51 |
| "(b) The Second National Bank, Houston, Tex. | $ 1,650.00 | 10–1–51 |
| "(c) First National Bank, Houston, Texas | $ 360.00 | 9–25–52 |
| "(d) T. J. Bettes & Co., Houston, Texas | $ 500.00 | 12–15–52 |
| "(e) Merchants & Employees Industrial Bank, Houston, Tex. | $ 695.00 | 2–24–53 |
| "(f) National Bank of Commerce, Houston, Texas | $ 1,000.00 | 3–24–53 |

ernment that falls within the purview of the statute in question, but only those which come clearly within its terms.", he held that what Cochran was charged with and admitted doing did not constitute the making of a false claim under the act, and entered judgment accordingly.

Appealing therefrom, the United States, in its brief, under the heading, "A. The civil remedy provided by the False Claims Act must be liberally construed", is here stressing "the need for a functional interpretation of the statute" and citing in support United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. While not making its meaning completely clear, it seems to be urging upon us: that Section 231 must be viewed, not as ordinary penalty statutes are viewed, as confined in scope and operation to and by the language used, but as a sort of catch all statute announcing and containing a general declaration of principle against fraud and overreaching; that proof that the person proceeded against under it had done any specific thing denounced as an offense is not required, but only proof that the defendant has acted badly toward the United States; and that, under such proof, he must, and may be, subjected, to the penalties the statute provides, not for having violated its terms but for transgressing its spirit.

■ Chafing at the uniform construction of the statute,[3] the United States in effect insists that the statute in fact and

"That to secure said loans, the defendant made, filed and submitted to each institution named, certain Federal Housing Administration Title 1 Credit Applications, which applications misrepresented the defendant's obligation and debts.

"At the time of submission of the credit applications to each institution, the defendant knew them to be false.

"The defendant in applications (b), (d), and (f), in addition to the misrepresentation of obligations and debts, further set forth reasons for which the loans were sought and which reasons the defendant knew to be false.

"Defendant knew at the time of submission of the credit application and the application for loan that each loan was of the type described as Federal Housing Administration Title 1 Home Improvement Loan.

"Each of said loans was, in accordance with procedures established and set up by the Federal Housing Administration, reported to the Federal Housing Administration for the purpose of obtaining insurance on the net proceeds of the notes, which in each case was less than the actual amount of the note, the difference being legitimate interest, carrying charges and costs, which were in accordance with legal and usual practices passed on to the defendant, and the net proceeds of each of said notes was in fact insured by the Administrator of the Federal Housing Administration under the authority conferred upon him by 12 USCA 1703(a).

"The defendant actually received certain sums of money in connection with the execution by him of each said note from each of the lending institutions involved, each of said institutions acting partially or entirely in reliance upon the credit applications submitted to them by defendant.

"That defendant has defaulted in the payment of none of the notes above mentioned, and all of the installments have been paid as they came due.

"The lending institutions have not made demand upon the Federal Housing Administration for reimbursement of the net proceeds of said notes under the terms of policies of insurance issued.

"That there is attached hereto, and by agreement is made a part of said stipulation, the indictment, Criminal Cause No. 12144 in the Houston Division of the Southern District of Texas. Attached hereto further is the judgment of conviction in the above case in which verdicts of guilty were rendered as to the defendant in Counts 1, 2, 3, 4, 6, and 7, and a not guilty verdict as to Count 5.

"That Counts 1, 2, 3, 4, 6 and 7 correspond to the institutions set forth in Stipulation III, being (a), (b), (c), (d), (e), and (f). * * * (Violation Section 1010, Title 18 U.S.C.)

"With respect to each of the loans named in Stipulation of Facts herein filed, the premium for insurance was paid and insurance, as authorized by 12 USCA 1703(a), was in effect on each said loan."

3. "In order to bring a case within the statute * * *, it is necessary to show that a claim is presented against the United States, or in rem against its property. This interpretation of the statute

in law applies here where neither money nor property was claimed from or against the United States. It does this on the theory that the defendant, in applying to the banks for credit on an F. H. A. loan form, *made a claim upon the government for the extension of its credit in support of the loans applied for, the government was cheated, and this was in effect a false claim upon which the United States was fraudulently induced to part with money or property.*

It goes without saying that the acts of the defendant were criminal and that he was correctly prosecuted and convicted under the applicable statute, Section 1010, Title 18 U.S.C. for making false statements in connection with procuring the loan from the bank. It is quite another thing, however, to say that, because he was so guilty, he was subject to the penalties provided in Section 231. Section 1010 does not so provide. It specifically denounces as an offense the making "for the purpose of obtaining any loan or advance of credit from any * * * or corporation with the intent that such loan or advance of credit shall. be offered to or accepted by the Federal Housing Administration for insurance * * * any statement, knowing the same to be false," and under this statute, which plainly dealt with and plainly denounced his actions as an offense, defendant was correctly prosecuted and convicted.

■■■ What the government is in effect doing here is reading into Section 231, the language of Section 1010, or, putting it differently, reading Section 231 as though it contained the same or similar language to Section 1010, whereas, as plainly appears in note 1, supra, nowhere in it is there any language having such purport or effect. Every word and line of this statute breathes the purpose to deal, it has the effect of dealing, only with the acts of persons falsely claiming money or property in the circumstances and with the effect dealt with in the statute. The statute does not deal with or denounce fraud in general. It cannot be read as doing so. In the Marcus case, on which the government so strongly relies, the court thus correctly states the rule controlling here:

"Sound rules of statutory interpretation exist to discover and not to direct the Congressional will. True, § 5438 is criminal and for that reason in interpreting so much of its language as it shares in common with Sec. 3490 *we must give it careful scrutiny lest those be brought within its reach who are not clearly included;* but after such scrutiny we must give it the fair meaning of its intendment." (Emphasis supplied.)

■■■ Since writing the foregoing, our attention has been called by the United States to an opinion of the Third Circuit, Judge Biggs dissenting, in U. S. v. Tieger, 234 F.2d 589, 592. In it, Judge Hastie, speaking for the court, in an opinion dealing concisely, clearly, and correctly, we think, with the precise question here involved, reached the same conclusion that we have reached, that "The district court correctly concluded that the statute deals only with false claims upon the government for money or property and that no such claim is revealed * * *."

The judgment appealed from was right. It is affirmed.

RIVES, Circuit Judge (dissenting).

While I appreciate the logic and force of the majority opinion in this case and also of the majority opinion of the Third Circuit in United States v. Tieger, 234

is so entirely settled as to be beyond any question. * * * United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616." United States ex rel. Kessler v. Mercur Corporation, 2 Cir., 83 F.2d 178, at page 181.

"We think the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud". United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 388, 87 L.Ed. 443.

F.2d 589, both seem to me to construe too narrowly the False Claims Act. That Act, I think, should be given "the fair meaning of its intendment", which is "to provide protection against those who would 'cheat the United States.'" United States ex rel. Marcus v. Hess, 317 U.S. 537, 542, 544, 63 S.Ct. 379, 383, 87 L.Ed. 443. It provides a civil remedial action for liquidated damages instead of a penalty. United States ex rel. Marcus v. Hess, supra, 317 U.S. at pages 548 et seq., 63 S.Ct. at page 386 et seq. Cf. Rex Trailer Co. v. United States, 350 U.S. 148, 152, et seq., 76 S.Ct. 219; United States v. Weaver, 5 Cir., 207 F. 2d 796, 798.[1]

Inducing the Government to pledge its credit by a false and fraudulent claim therefor seems to me as much within the False Claims Act as so inducing it to part with its money or property.[2] True, the right to recover money from the Government is contingent on default on the loan, and a further claim upon the happening of that event might give rise to an additional right of action under the False Claims Act. When, as here, however, the fraud is discovered after the Government has approved the loan for insurance, but before default, the Government should not be forced to wait until the borrower defaults on the loan and causes the lender to make a further claim on the Government. Two separate claims may be involved, the first for the approval of the loan for insurance, the second for the payment of the insurance.

Chief Judge Biggs dissenting in United States v. Tieger, supra, has so well expressed the views which I entertain, that I forego further discussion.

I respectfully dissent.

1. It follows that appellee's claim of double jeopardy is without substance. United States ex rel. Marcus v. Hess, supra, 317 U.S. at page 548 et seq., 63 S.Ct. at page 386 et seq.; United States ex rel. Ostrager v. New Orleans Chapter, Associated General Contractors, 317 U.S. 562, 563, 63 S.Ct. 393, 87 L.Ed. 458; United States v. Grannis, 4 Cir., 172 F.2d 507, 511.

2. Indeed the credit insurance constitutes intangible property. Burnet v. Wells, 289 U.S. 670, 679, 53 S.Ct. 761, 77 L.Ed. 1439; Vance on Insurance (2nd ed.), § 280, pp. 929-932; 29 Am.Jur., Insurance, § 126, pp. 142, 143, notes 13-18.