UNITED STATES of America ex rel. Russell HAYES, Plaintiff/Relator,

v.

CMC ELECTRONICS INC., Defendant.

No. CIV 01–33.

United States District Court, D. New Jersey.

Dec. 1, 2003.

David A. Cohen, Esq., The Cullen Law Firm, Washington, DC, for Plaintiff.

Michael A. Chagares, Office of the US Attorney, Newark, NJ, for Intervenor–Plaintiff/Intervenor–Defendant/Defendant.

Edward G. Imperatore, Harwood Lloyd, LLC, Hackensack, NJ, for Intervenor–Defendant.

## OPINION

HOCHBERG, District Judge.

**Introduction:**

This matter comes before the Court on Defendant CMC Electronic's ("CMCE") Partial Motion to Dismiss Counts I and II of the Complaint pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, Defendant has brought a Motion for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56(c). The Defendant contends that the Plaintiffs do not have a cause of action under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA") because the Government was precluded from sustaining losses or damages in the contracts at issue. In the alternative, the Defendant argues that this Court should grant partial summary judgment declaring that the Government's maximum recovery is limited to the FCA's statutory penalties. Assuming all the allegations of the Complaint to be true, this Court finds that CMCE's alleged false or fraudulent claims are covered by the FCA and that a question of fact exists as to the damages suffered by the Government. Therefore, the Defendant's Partial Motion to Dismiss and its alternative Motion for Partial Summary Judgment are denied.

**Factual Background:**

The relator, Russell Hayes ("Hayes"), brought a qui tam action under the False Claims Act for the alleged fraud committed by his former employer, Canadian Marconi Corporation (which changed its name to CMC Electronics Inc. and is hereafter referred to as "CMCE"). The United States intervened. Hayes was a former project manager for the company, responsible for ensuring that production of radios designed by CMCE pursuant to current contracts was completed within budget and on time.

CMCE designed and manufactured a secure radio communications system known as AN/GRC 103(v) Radio Set ("radio set").[1] CMCE sold most of these radio sets to the U.S. Department of Defense. According to the Plaintiff, CMCE began to purchase surplus and used equipment to fulfill its orders after a surplus of military equipment, including radio sets, emerged in the market during the 1980s and early 1990s.

Throughout the 1990s, the United States Government entered contracts to sell to Saudi Arabia various types of military hardware, including the radio sets. These contracts were entered pursuant to the Arms Export Control Act which is part of the Foreign Military Sales ("FMS") program designed by Congress to address the need for international defense cooperation. The Arms Export Control Act, 22 U.S.C. § 2751 et. seq. authorizes the President of the United States to sell defense articles and services to eligible allies from two sources of supply: 1) sales from the stocks of the Department of Defense, 22 U.S.C. § 2761 and 2) sales of procured items, 22 U.S.C. § 2762.[2] 22 U.S.C. § 2762 provides that when procurement contracts are entered by the United States, the foreign country or organization to which the items will be sold must cover the entire cost of the procurement contract. The written

---

1. The radio set is a secure radio allowing communication between Patriot missile shelters and command elements and is an integral component of the Patriot Missile System.

2. This section permits the President to procure items for the United States for resale to foreign nations.

agreement for these sales are called Letters of Offer and Acceptance (LOA).

Pursuant to 22 U.S.C. § 2762(a), on September 29, 1993, the United States Army Communications–Electronics Command ("CECOM") contracted with AEC Electronics ("AEC") for the purchase of 97 radio sets. The Government then resold these radio sets to the Saudi Government pursuant to an LOA with Saudi Arabia. On September 30, 1993, to fulfill its contract with the U.S., AEC entered a subcontract with CMCE for the sale of the radio sets to the U.S. CMCE agreed that "all the Equipment it provides under this Contract will be newly manufactured and that no used, reconditioned or overhauled Equipment will be provided."

According to the Plaintiffs, CMCE violated this provision by filling the contract with radio sets and multiplexers built with parts and components that were either previously used or obtained from the government surplus market. Thus, according to Hayes and the U.S., CMCE significantly overstated the cost of producing the contract for the production of the radio sets for the Saudi Arabian Patriot Program because it charged for new radios while supplying used radios.

**Analysis:**

**I. Defendant's Partial Motion to Dismiss:**

A. *Legal Standard:*

A motion to dismiss should be granted only when, accepting all the allegations in the complaint to be true, and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to show that it is entitled to the relief being sought. *Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir.2000). A motion to dismiss must be denied if the material facts alleged, in addition to inferences drawn from those allegations, provide a basis for recovery.

*Menkowitz v. Pottstown Memorial Medical Center,* 154 F.3d 113, 124 (3d Cir.1998).

B. *The False Claims Act:*

In this case, Hayes has alleged that CMCE presented fraudulent invoices to the U.S. Government. This is sufficient to state a claim for relief under the FCA. The FCA sets forth liability for the submission of false or fraudulent claims for payment or approval to the U.S. Government or the Armed Forces. The statute provides:

Liability for certain acts.—Any person who-

1) knowingly presents, or causes to be presented, to an officer or an employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]

2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government. . . .

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damage which the Government sustains because of the act of that person. . . .

31 U.S.C. § 3729(a)(1).

In order to bring a cause of action under the FCA, the alleged false or fraudulent claim must be made for payment by the U.S. Government. *See, e.g., U.S. v. Neifert–White Co.,* 390 U.S. 228, 232–233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968); *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 184 (3d Cir.2001). In this case, CMCE submitted a claim to the U.S. Government for payment at an inflated rate. The fact that the U.S. used funds obtained from Saudi Arabia to pay for the radios does not mean that the

Defendant's false or fraudulent claim was not a demand for payment from U.S. funds.

Recently, the District Court for the Middle District of Florida considered a case almost identical to this one. In *U.S. v. Lockheed Martin Corp.*, the U.S. Government and its relator alleged that Lockheed Martin had double-billed the Government and submitted false invoices in connection with several LANTIRN[3] pods contracts. *Lockheed Martin*, 282 F.Supp.2d 1324, 1327 (M.D.Fla.2003). The U.S. Government purchased LANTIRN pods from Lockheed, and resold them to Saudi Arabia, Greece, and Bahrain, pursuant to LOAs. Lockheed Martin argued that the FCA did not apply because the pods were paid for by foreign funds which were required to cover the cost of the procurement contract pursuant to 22 U.S.C. § 2751 et seq. *Lockheed Martin*, 282 F.Supp.2d 1324, 1338–41. The Court rejected these contentions, holding that the submission of false invoices for payment by the U.S. Government was covered by the FCA regardless of whether the Government would resell the articles to a foreign government. Viewing the procurement contract and the contract with the foreign government as separate transactions, the Court explained that the foreign funds belong to the U.S. Government and that the application of the FCA to the false or fraudulent claim does not depend on when the U.S. Government received payment from the foreign government. *Lock-*

*heed Martin*, 282 F.Supp.2d 1324, at 1338–39.

This Court agrees with the reasoning of *Lockheed Martin.* CMCE argues that its Motion to Dismiss must be granted because the U.S. Government cannot sustain a loss because the Arms Export Control Act requires the foreign government to cover the cost of the procurement contract.[4] This argument is rejected. The "no loss" provision in the Arms Export Control Act does not insulate CMCE from liability for the submission of false claims to the government. *Lockheed Martin*, 282 F.Supp.2d 1324, 1340–41; *see also, U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 544, 63 S.Ct. 379, 87 L.Ed. 443 (1943)(explaining that the FCA does not make the extent of the safeguard of Government money dependent on bookkeeping devices used for the distribution of Government funds). Moreover, even if the U.S. Government were unable to prove actual monetary damages, the false claims are still actionable under the FCA.

Assuming the allegations in the Complaint to be true, the Government sustained monetary losses due to CMCE's false invoices. First, the Government paid more money than it otherwise would have paid if CMCE had disclosed that the radios contained used parts. The fact that the Saudi Government provided the funds that the U.S. used to purchase the radios cannot obviate the fact that the U.S. Government overpaid for the radios by reason of

---

**3.** LANTIRN stands for Low Altitude Navigation and Targeting Infrared for Night.

**4.** 22 U.S.C. § 2762(a) provides that the President may enter contracts for the:
procurement of defense articles or defense services for sale for United States dollars to any foreign country or international organization if such country or international organization provides the United States Government with a dependable undertaking (1)

to pay the full amount of such contract which will assure the United States Government against any loss on the contract, and (2) to make funds available in such amounts and at such times as may be required to meet the payments required by the contract, and any damages and costs that may accrue from the cancellation of such contract, in advance of the time such payments, damages, or costs are due.

the false invoices. *Lockheed Martin*, 282 F.Supp.2d 1324, 1338–39; *U.S. v. Neifert–White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968)(holding that fraudulent invoices used as a basis to apply for a loan from the Commodity Credit Corporation is a claim covered by the FCA). Second, the U.S. government is likely to be required to reimburse the Saudi government for the loss sustained by the Saudi government. Third, the Government suffered damage to the integrity of the contracting process as Saudi Arabia received used radio sets despite paying for new ones. Finally, it is possible that Saudi Arabia will have less money to spend on other defense needs, thereby forcing the U.S. to increase its expenditures by a like amount to obtain the same level of global security.

Even if the false claim had thus far resulted in only the potential for loss to the U.S. Government, this would be sufficient for a cause of action under the FCA. The FCA applies to any person who makes a false or fraudulent statement "with the purpose and effect of inducing the Government to immediately part with money." *Neifert–White*, 390 U.S. at 232, 88 S.Ct. 959. There is no question that false or fraudulent invoices overcharging the Gov-

ernment for radios that the Government will resell to Saudi Arabia have the purpose and effect of inducing the U.S. Government to part with money.

CMCE argues that the Third Circuit's decision in *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176 (3d Cir.2001) supports its motion to dismiss, and requires the Government to show an actual and quantifiable monetary loss. *Hutchins* requires that the false claim demands payment from the Government, and not from some other third party, in order to be covered by the FCA. In *Hutchins*, the relator alleged that a law firm submitted inflated legal bills for approval to the Bankruptcy Court. Because these claims were for money from a non-governmental third party (the bankruptcy estate) and not for money or property of the Government, the Third Circuit held that the claim was not actionable under the FCA. *Hutchins*, 253 F.3d at 184. The Third Circuit recognized that "the False Claims Act seeks to redress fraudulent activity which **attempts to** or actually causes economic loss to the United States Government." *Id.* (emphasis added).[5] By contrast, CMCE's claim was made for funds in the

---

5. In reaching its decision in *Hutchins*, the Third Circuit relied on its earlier decision in *U.S. v. Tieger*, 234 F.2d 589 (3d Cir.1956). In *Tieger*, the Third Circuit held that the FCA did not apply because the Defendant had not made a claim for Government money or property. *Tieger*, 234 F.2d at 592. However, this holding was not based on the lack of economic injury. To the contrary, the Third Circuit recognized that "a false claim may be actionable though in the given case the government has not been injured by its assertion." *Tieger*, 234 F.2d at 590 n. 4. Thus, despite some seemingly broad dicta in *Hutchins*, even if the CMCE is correct in stating that the U.S. did not sustain a loss, in light of the facts of *Hutchins*, the other authorities it cites, and several other circuit court and U.S. Supreme Court decisions, *Hutchins* does not require

the government to suffer monetary damages, but simply requires that the false claim be made for government property. *See also, U.S. v. Rohleder*, 157 F.2d 126, 129 (3d Cir.1946)(holding that the FCS covers false claims even when actual damages are not proven); *Rex Trailer Co., Inc. v. U.S.*, 350 U.S. 148, 153 n. 5, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *U.S. v. Killough*, 848 F.2d 1523, 1533 (11th Cir.1988); *U.S. v. Hughes*, 585 F.2d 284, 286 n. 1 (7th Cir.1978); *Brown v. U.S.*, 207 Ct.Cl. 768, 524 F.2d 693, 706 (1975); *U.S. v. Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir.1966); *Fleming v. U.S.*, 336 F.2d 475, 480 (10th Cir.1964), *cert denied*, 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); *Toepleman v. U.S.*, 263 F.2d 697, 699 (4th Cir.1959); *cert. denied, Cato Bros. Inc. v. U.S.*, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959).

United States Treasury.[6] Thus, CMCE's alleged fraudulent or false statements are within the category contemplated in *Hutchins* as actionable under the FCA. *See also, Lockheed Martin,* 282 F.Supp.2d 1324, 1339–40 (distinguishing *Hutchins* on the grounds that the Defendant in *Hutchins* made no claim for Government money or property).

## II. Defendant's Motion for Partial Summary Judgment:

### A. *Legal Standard:*

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1349 (3d Cir.1994).

### B. *Actual Damages:*

█ Defendant's argument in support of its Motion for Partial Summary Judgment suffers from the same flaws that are evident in its Partial Motion to Dismiss. The Defendant argues that there is no dispute

that the Government sustained no actual loss because of the "no loss" provision in the Arms Export Control Act. As explained above, the fact that the Government used funds obtained from Saudi Arabia does not mean that the Government suffered no actual damages due to the Defendant's false claim. Indeed, the relator alleges that the Government sustained damages of at least $14,600,000. Therefore, construing all facts and inferences in the light most favorable to the Plaintiffs, summary judgment limiting the Government to the statutory penalty of not less than $5,000 is inappropriate because an issue of fact exists as to the damages that the Government sustained.

## Conclusion:

CMCE's alleged fraudulent claims had the purpose and effect of causing the United States to pay money it was not obligated to pay. Therefore, the Defendant's Partial Motion to Dismiss is denied. Because an issue of fact exists as to the actual damages suffered by the Government, Defendant's Motion for Partial Summary Judgment limiting the Government's recovery to the statutory penalty is also denied. An appropriate order will issue.

---

6. Funds used to pay for equipment that will be sold to foreign governments pursuant to a contract under the Arms Export Control Act are funds of the United States, regardless of whether payment from the foreign government is deposited into the FMS Trust Fund before or after the U.S. pays for the equipment. *Lockheed Martin,* 282 F.Supp.2d 1324, 1338–39; *Soboleski v. C.I.R.,* 88 T.C. 1024, 1987 WL 49312 (1987), *aff'd,* 842 F.2d 1292 (4th Cir.1988)(holding that money paid by Saudi Arabia into the FMS Trust Account for payment to certain Army Corps employees are appropriated funds and vested in the U.S. Government).