## CAHILL v. CURTISS–WRIGHT CORPORATION.

### No. 688.

District Court, W. D. Kentucky, Louisville Division.

Nov. 3, 1944.

Herbert H. Monsky, of Louisville, Ky., for Frank R. Cahill, Jr.

Francis M. Shea, Asst. Atty. Gen., Eli H. Brown, III, U. S. Atty., of Louisville, Ky., Joseph M. Friedman, Sp. Asst. to Atty. Gen., and Jess G. Schiffmann, Atty., Department of Justice, of New York City, for United States of America.

Squire R. Ogden, of Louisville, Ky., Kenneth M. Spence, of New York City, Ogden, Galphin, Tarrant & Street, of Louisville, Ky., and Spence, Windels, Walser, Hotchkiss & Angell, of New York City, for defendant.

MILLER, District Judge.

The plaintiff, Frank R. Cahill, Jr., brought this action for himself and for the United States of America against the defendant Curtiss-Wright Corporation, pursuant to the provisions of Title 31 U.S.C.A. §§ 231 and 232, which deal with actions by informers respecting persons making false claims against the Government. He asks judgment in the penal sum of $2,000, as provided by the statute, and in the further sum of $10,000,000, being double the amount of damage which it is alleged the United States has sustained by reason of the alleged illegal acts complained of. The Government entered its appearance in the action and is now prosecuting the same on its own behalf. The defendant has moved for summary judgment dismissing the complaint, which motion is supported by the affidavit of G. J. Brandewiede, who was its general manager at its plant at Louisville, Kentucky, during the time the acts complained of occurred. The Government has filed in opposition to the motion the affidavit of Francis M. Shea, Assistant Attorney General, most of which is on information and belief of the affiant.

The petition alleges that the defendant is engaged in the manufacture of equipment and material and in doing work for the United States in its plant in Jefferson County, Ky., under a contract providing for compensation to the defendant based upon costs and a margin of profit computed by the addition to such costs of an agreed percentum thereof; that it has increased the amount of its costs of production by deliberate extravagance and waste in placing upon its payroll and retaining thereupon large numbers of employees whose services were not needed, necessary or productive, and were of no value to the production of the material and products being produced; and that such actions were caused and permitted by the defendant for the fraudulent purpose of increasing its costs of production in order that its aggregate profit computed upon its gross costs might thereby be increased, and in order that upon renegotiation its basic costs by being so enlarged would place it in a position more advantageous to itself. The defendant's answer denies the alleged extravagance, waste and fraud. It specifically alleges that its contracts with the Government do not call for compensation on a basis of cost plus percentum of cost but provide for repayment of costs plus a fixed fee, which fixed fee is not varied or subject to change by reason of the actual cost incurred in the performance of the work provided for in such contracts. The contract provisions themselves are decisive of this dispute and sustain the defendant's position with reference to its compensation. The answer also alleges that the entire operation of the plant in Jefferson County, Kentucky, has been conducted under the direction and supervision of

officers and employees of the United States who were at all times in the possession of all evidence and information upon which the complaint could have been based. The affidavit of Mr. Brandewiede states, in addition to other facts, that the defendant, under its contract with the Government of August 21, 1942, began the production of wooden cargo planes of the design known as C–76; that about August 1, 1943, the Army Air Forces advised the defendant of its decision to abandon the production of wooden cargo planes and directed the defendant to make the changes in the facilities at the Louisville plant necessary to assemble metal cargo planes known as C–46; that in August, 1943, the demands of industry in and around Louisville for labor had been such that there was little, if any, labor available in or near Louisville which had experience in the production of metal airplanes, and it became necessary for the defendant to begin the training of its employees to qualify them to work with metal in the production of metal cargo planes, and such training was given its employees in accordance with the direction and approval of the Army Air Forces; that in connection with changing the production from wooden cargo planes to metal cargo planes, considerable delays were experienced in rearranging the facilities in the Louisville plant and in obtaining an adequate supply of the parts necessary for the assembly of the metal cargo planes; that the defendant determined that it would be inadvisable to release all employees then on the payroll who were necessary to the production of metal planes, but that many employees should be retained pending the time when their services could be fully utilized; that while the facilities of the plant were being changed it was impossible to utilize to the fullest extent the services of all employees who had been retained on the payroll, but every effort was made to employ the services of such employee to the fullest extent possible under the circumstances; and that although some idleness on the part of some employees resulted, yet the existence of such idleness was at all times known to the resident representative of the Army Air Forces and to those persons on the staff of such resident representative consisting of inspectors and timekeepers.

The statute under which the action is brought provides in substance that any person who shall make or present for payment or approval to or by any officer of the United States "any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent", shall pay to the United States the sum of $2,000 and in addition double the amount of damages which the United States may have sustained thereby. It has been held that the statute being drastically penal should be strictly construed, and that fraud or deceit is a sine qua non of liability. United States ex rel. Brensilber v. Bausch & Lomb Optical Company, 2 Cir., 131 F.2d 545. It is likewise settled that any kind of fraud or deceit on the part of a person in his dealings with the Government is not enough, but that the fraud must be used in connection with making a claim against the Government. United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616; United States ex rel. Kessler v. Mercur Corp., 2 Cir., 83 F.2d 178; Olson v. Mellon, D.C., 4 F.Supp. 947, affirmed 3 Cir., 71 F.2d 1021. While the petition alleges fraud in general terms, yet such general allegations are conclusions, and it is necessary to look to the specific facts alleged to determine whether or not fraud is actually charged. Curacao Trading Co., Inc., v. William Stake & Co., Inc., D.C.S.D.N.Y., 2 F.R.D. 308; Godsey v. Smith, 8 Ky.Law Rep. 424; Gray v. Gregory, 140 Ky. 266, 130 S.W. 1093. Fraud consists in the false representation of a material fact, made with knowledge of its falsity and with the intent to deceive the other party, which representation must be believed and acted upon by the party deceived to his damage. No such allegations are set out in the petition. On the other hand, the petition charges the defendant with deliberate or negligent extravagance and waste in maintaining large numbers of useless employees upon the payroll. It does not charge in any place that any false claim was presented to any officer of the Government for payment with knowledge on its part that such claim was false. There is a marked difference between negligence or extravagance on the one hand and fraud on the other. The defendant may or may not have exercised good judgment in deciding in view of the scarcity of available workers, to hold and pay employees whose full services could not be used over a temporary interval in order to have them available later. It may have violated some manpower regulation in doing so, if such actions were not jus-

tified by the conditions. Such action may have increased the cost of production to the Government, and on the other hand such increased cost may have been entirely justified in considering the avoidance of later delays that would have resulted if the employees had been released and could not be promptly replaced with other trained workers. If the Government considers the increased cost unjustified that much of the claim for reimbursement can be disallowed. But that is an entirely different matter from the one herein presented. A mistake in judgment, even though damaging, is not fraud. The petition does not even allege that any claim, fraudulent or otherwise, has as yet been presented to the Government; it only goes as far as alleging that the increased costs have been incurred for the purpose of increasing its profits, presumably when the claims are later presented. The alleged wrongdoing, if any, may cost the Government money, but is not the kind included within the provisions of the fraudulent claim statute. See Olson v. Mellon, supra.

This view of the case makes it unnecessary to consider other points urged by the defendant. Its motion for summary judgment dismissing the complaint is sustained.