**UNITED STATES of America,**
**Plaintiff,**

v.

**Caroline G. FARINA and American Fireworks Company, Inc., Defendants.**

**Civ. No. 124–57.**

United States District Court
D. New Jersey.

July 19, 1957.

Chester A. Weidenburner, U. S. Atty., by Charles H. Nugent, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Archer, Greiner, Hunter & Read, Camden, N. J., by James Hunter, III, Camden, N. J., for defendants.

MADDEN, District Judge.

█ This is a motion by the defendants to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1] Upon a motion of this nature the Court is only justified in dismissing a complaint for legal insufficiency when, "it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim." Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631, 635; Leimer v. State Mutual Life Assurance Co., 8 Cir., 1940, 108 F.2d 302.

The facts alleged by the Government in its complaint are, as follows: on or about December 3, 1954, the defendant, American Fireworks Company, Inc. (hereinafter referred to as American) and the defendant, Caroline Farina, conspired or agreed to defraud the United States by subverting the requirement that competitive bids for Government procurement be genuine, secret and independent; that sometime prior thereto, American had submitted a competitive bid for the manufacture of signal pyrotechnics under Proposal M–1029; that on or about December 4, 1954, co-conspirator William F. Angermann (not joined as a defendant in this action) who was a contract negotiator employed by the Philadelphia Ordinance District, Department of Defense, informed the defendant Farina, secretary of American, that a bid for the contract made by another firm was lower than that submitted by American; that Angermann recommended Farina submit a revised bid on behalf of American; that on December 6, 1954, a revised bid was submitted by American to the Philadelphia Ordinance District which was lower than its previously submitted bid and slightly lower than the original low bid made by the other firm; that the letter accompanying the bid of December 6, 1954, and transmitting it, bore the date of December 3, 1954, the final date for receipt of all bids on said proposal; and finally, that when Angermann prepared the summary of the bids submitted on Proposal M–1029, he made the notation that the bid submitted by American had been received at the Philadelphia Ordinance District on December 3, 1954, knowing said notation to be contrary to fact.

The Government urges that the activities of the defendants as set forth are proscribed by and constitute a violation of 31 U.S.C.A. § 231, better known as the False Claims Act[2] for which the

1. 28 U.S.C.A. § 2072 (formerly 723c).
2. 31 U.S.C.A. § 231. "Liability of persons making false claims
"Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, or who, having charge, possession, custody, or control of any money or other public property used or to be used in the military or naval service, who, with intent to defraud the United States or willfully to conceal such money or other property, delivers or causes to be delivered, to any other person having authority to receive the same, any amount of such money or other property less than that for which he received a certificate or took a receipt, and every person authorized to make or deliver

United States demands the forfeiture of $2,000 by each defendant for each act proscribed therein and upon which it bases its sole right to recovery.

The respective briefs submitted by counsel present cogent disputation of the issues raised by this motion. The defendants' argument in support of the motion rests heavily upon the authority of United States v. Tieger, D.C., 138 F. Supp. 709, affirmed, 3 Cir., 1956, 234 F. 2d 589, certiorari denied 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237, whereas, the Government's argument in opposition is constrained to a sustenance of the action on the basis of a violation of the "third clause" of the aforesaid statute, i. e., "entry into a conspiracy to defraud the United States by aiding to obtain the approval of false claims," and a liberal construction of the statute.

A careful examination of the statute will disclose in certain and unequivocal language that a "claim" is a sine qua non to the applicability of the statute in any given circumstance. See United States v. Tieger, supra; United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616; United States ex rel. Kessler v. Mercur Corporation, 2 Cir., 1936, 83 F.2d 178, certiorari denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed. 424; and Cahill v. Curtiss-Wright Corporation, D.C.W.D.Ky.1944, 57 F.Supp. 614. The Court of Appeals for the Third Circuit in affirming the District Court's decision in the Tieger case stated:

> "The district court correctly concluded that the statute (False Claims Act) deals only with false

claims upon the government for money or property * * *." [3]

And the Supreme Court in United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, on page 544, 63 S.Ct. 379, at page 384, 87 L.Ed. 443, when considering the three clauses of the statute, stated:

> "These provisions, considered together, indicate a purpose to reach any person who knowingly assisted in causing the government to pay *claims which were grounded in fraud,* without regard to whether that person had direct contractual relations with the government." (Emphasis supplied.)

Thus, the necessity of establishing a false or fraudulent claim within the intendment of all three clauses of the statute is an obvious and accepted proposition.

A "claim" by construction of the statute herein is restricted to the conventional meaning of demand for money or property to which a right is asserted against the Government founded upon the Government's own liability. United States v. Cohn, supra; United States v. Tieger, supra. A "bid" as employed in the present context connotes "an offer to perform a contract for work and labor or supplying materials at a specified price." Being essentially an offer, a bid creates no rights in either the offeror (bidder) or the offeree until a contract comes into existence by acceptance. An offer gives rise to no rights to make a demand of either money or property nor is it, per se, a demand

---

any certificate, voucher, receipt, or other paper certifying the receipt of arms, ammunition, provisions, clothing, or other property so used or to be used, who makes or delivers the same to any other person without a full knowledge of the truth of the facts stated therein, and with intent to defraud the United States, and every person who knowingly purchases or receives in pledge for any obligation or indebtedness from any soldier, officer, sailor, or other person called into or employed in the military or naval service any arms, equipments, ammunition, clothes, military stores, or other

public property, such soldier, sailor, officer, or other person not having the lawful right to pledge or sell the same, shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

3. United States v. Tieger, supra, 234 F.2d at page 592.

for either money or property; it is merely "a calling upon another to enter into a contract" and hence, by no means, can it be deemed a "claim" within the intendment of the statute as construed.[4]

In addition, no facts have been alleged by the Government indicating fraud, within the meaning of the statute, in connection with making a claim against the United States. "Fraud consists in the false representation of a material fact, made with knowledge of its falsity and with the intent to deceive the other party, which representation must be believed and acted upon by the party deceived to his damage." Cahill v. Curtiss-Wright Corporation, supra [57 F.Supp. 616]. How has the Government been defrauded or how would it be defrauded by the mere receipt of a revised and predated bid which, if accepted, would cause the Government to expend less in payment of the undertaking proposed by the bid? It is not readily conceivable the Government would be damaged to its prejudice under that circumstance.

In this connection, such is a decidedly distinguishing characteristic of this case, setting it apart from such cases as the Hess case wherein the defrauding consisted in collusive bidding that caused the Government to expend a greater sum in payment of work performed than it would have been required to pay had there been free competition in the open market.

In any event, there is nothing to show that the bid submitted by the defendants herein was ever accepted so as to even create a contract. Assuming, arguendo, that there was fraud in submitting that bid of December 6, 1954, the present case is further distinguishable from the Hess case in that the latter case involved an executed or consummated contract so that the initial fraudulent action (i. e., the collusive bidding) "tainted every step thereafter to the ultimate goal, payment by the Government to persons causing it to be defrauded,"

and in that the demand for payment was made *after* completion of the work called for by the contract and pursuant thereto.

At the very most, the defendants herein are guilty of interference with the rules and regulations relating to governmental bidding but not of such fraud as contemplated by the statute herein or proscribed by any other legislative edict pleaded or urged by the plaintiff in support of its action.

It is, therefore, difficult for this Court to comprehend how under any state of the facts alleged in support of the Government's position, the Government is entitled to the relief requested, particularly in light of United States v. Tieger, supra. The motion to dismiss will be granted.

Counsel will prepare an appropriate order.

4. United States v. Tieger, supra, 234 F.2d at page 591, footnote 7.