UNITED STATES of America, Plaintiff,

v.

Harry A. TATE, Jr., Defendant.

No. 1177.

United States District Court E. D. Kentucky.

June 28, 1963.

Bernard T. Moynahan, Jr., U. S. Atty., Moss Noble, Asst. U. S Atty., for plaintiff.

Harry A. Tate, Jr., per se.

HIRAM CHURCH FORD, District Judge.

At the times referred to in this case, there was established in Kentucky a State Committee with its location at Lexington, Kentucky, known as "Agricultural Stabilization and Conservation Committee", usually referred to as "State A.S.C. Committee"; also in Hancock and Madison Counties, as well as in other counties of the State, there were established and maintained similar committees known and referred to as County A.S.C. Committees. The County Committees were composed of farmers of their respective counties. These organizations were maintained pursuant to the "Agricultural Adjustment Act of 1938", as amended, 7 U.S.C.A. § 1281 et seq., 52 Stat. 31 et seq., and in conformity with regulations made by the Commissioner of Agriculture for the execution and promotion of the purposes of the Act, pursuant to 7 U.S.C.A. § 1375(b), 52 Stat. § 375(b), page 66.

By this case, the United States seeks to recover sums alleged to have been fraudulently paid to and received by the defendant while he was acting as Office Manager of the A.S.C. office in Hancock County and in the A.S.C. office in Madison County and to recover under the forfeiture and damage provisions of the False Claims Act, 31 U.S.C.A. § 231.

The case was tried to the Court, without the intervention of a jury, on December 4, 5, 1962.

Upon consideration of the evidence presented, the admissions made by the defendant in a written statement filed in the record, and the briefs filed on behalf of the respective parties, and being advised, the Court finds facts and states conclusions of law as follows:

Findings of Fact

1. From October 19, 1958, to March 5, 1959, the defendant Harry A. Tate, Jr., was the duly employed Office Manager for the Hancock County A.S.C. Committee, which office was located at Hawesville, the county seat; and from March 6, 1959, to July 31, 1959, he was the duly appointed Office Manager for the Madison County A.S.C. Committee, which office was located at Richmond, Kentucky, the county seat.

2. The funds for the operation of these agricultural organizations were received from the Treasury of the United States.

3. The following testimony by Charles H. Allen, Administrative officer of the State A.S.C. Committee, describes the procedure as follows: (Tr.Ev. p. 11)

"Q. 10. Describe to the Court the mechanics by which the county office gets its money—that is, what particular documents, or what is done.

"A. They are made up each year, an operating budget for each of the counties. The county committee and office manager determine the need for their particular county a year in advance. Those plans are submitted to the state committee and, on the basis of those plans and knowledge of the programs that are operating in the county, they make a yearly allocation. Then on the quarterly basis the county requests the advance of funds from the Treasurer to carry out their operations and through the state office an advance is scheduled to the Treasury Department for actual funds to be issued to a particular county to carry on their work.

"Q. 11. Pursuant to this plan of operation, were funds thus made available in the year 1958 for the operation of the Hancock County A.S.C. office?

"A. Yes, sir.

"Q. 12. And also the Madison County A.S.C. office?

"A. Yes, sir.

"Q. 13. During 1958 and 1959?

"A. Yes."

4. The defendant, Mr. Tate, as such Office Manager, had authority to pay by check or draft upon the allotted funds the salaries and necessary expenses of the office of which he was the Manager, including per diem, annual leave, and sick leave, and also for the actual expenses incurred by the Manager for moving his family and household from the place of an office from which he was moved to the place of another office of a similar committee.

5. The defendant had several months of preliminary training before he was found qualified by the State Committee to serve as Office Manager for County Committees, and he was afforded ample opportunity to thoroughly know and understand the regulations governing the administration of the County A.S.C. offices.

6. The evidence shows that by means of checks or drafts drawn by the defendant upon the A.S.C. funds payable to himself, he fraudulently received the following funds to which he was not entitled:

| | |
|---|---|
| Per diem and travel, Oct. 19–24, 1958 | $60.12 |
| Per diem, Oct. 24–31, 1958, and travel | $123.26 |
| Excess moving expenses, from Monticello, Kentucky, to Hawesville, Kentucky—$427.00 less actual expenses of $47.00 | $380.00 |
| Mileage and per diem on purported trip to Lexington, Kentucky, 1/29–30/59 | $36.20 |
| Lump-sum leave payment 2/27/59 | $192.17 |
| Overpayment on salary | $145.26 |
| Per diem and travel at Richmond, Ky., March 5–7, 1959 | $43.20 |
| Excess moving charge $370.00 received, less $165.00 | $205.00 |
| Cold check | $7.50 |
| TOTAL | $1,192.71 |

7. The system followed by defendant was to place in the files of the respective A.S.C. offices, of which he was Manager, documents known as Forms CSS (see Exhibits 2, 3, 6 (containing 8 documents) 11, 14, and 15), by which he certified over his signature on each voucher " * * this voucher and attachments are correct and just in all respects, * * *" which certificates the defendant knew to be false, fictitious and fraudulent.

By the use of certificates, but without authority from either of the County Committees by which he was employed as Manager, or from the State A.S.C. Committee, upon checks or drafts filed in the record (Exhibits Nos. 4, 5, 7, 8, 9, 10, 12, 16 and 17) the defendant fraudulently received from funds allotted by the Treasury of the United States, in excess of lawful expenses of the office in which they are filed, the amounts hereinabove stated.

## Conclusions of Law

1. It seems clear from the record that by the use of the certificates and documents hereinabove referred to the defendant enabled himself to fraudulently and wrongfully receive the amounts stated from the funds allotted to meet the expenses of the respective offices in which the documents were filed and it seems inescapable that the provisions of the False Claims Act, 31 U.S.C.A. § 231, in respect to forfeiture of Two Thousand Dollars ($2,000) is thereby rendered applicable herein. United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 131 F.2d 545, Cahill v. Curtis-Wright Corporation, D.C., 57 F.Supp. 614.

No proof was introduced as to any damage which the plaintiff "may have

**398**

sustained by reason of" the acts of the defendant (§ 231 supra), and the judgment herein will not include any award on that account.

Counsel for plaintiff will prepare and submit for entry judgment in conformity herewith.