

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-29-2008

# Keith Sanders v. American-Amicable Li

Precedential or Non-Precedential: Precedential

Docket No. 07-3429

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Keith Sanders v. American-Amicable Li" (2008). *2008 Decisions*. Paper 276.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3429

———

UNITED STATES OF AMERICA
EX REL KEITH SANDERS;
KEITH SANDERS

v.

AMERICAN-AMICABLE LIFE
INSURANCE COMPANY OF TEXAS;
CENTRAL NATIONAL BANK
OF WACO, TEXAS

Keith Sanders,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-04327)
District Judge: Honorable Gene E. K. Pratter

———

Submitted Under Third Circuit LAR 34.1(a)
October 27, 2008

Before: SLOVITER, GREENBERG, Circuit Judges,
and IRENAS,* Senior District Judge

(Filed: October 29, 2008)

———

* Honorable Joseph E. Irenas, Senior United States District
Judge for the District of New Jersey, sitting by designation.

Harry P. Litman
Litman Law Firm
Pittsburgh, PA l5219

Jonathan K. Tycko
Tycki & Zavareei
Washington, DC  20036

      Attorneys for Appellant Keith Sanders

Jessica L. Ellsworth
Catherine E. Stetson
Mitchell E. Zamoff
Hogan & Hartson
Washington, DC 20004

      Attorneys for Appellee American-Amicable Life
      Insurance Company of Texas

Joanna J. Cline
Stephen G. Harvey
Pepper Hamilton
Philadelphia, PA l9l03

      Attorneys for Appellee Central National Bank
      of Waco, Texas

―――――――

OPINION OF THE COURT

―――――――

SLOVITER, Circuit Judge.

      Keith Sanders, the Relator in this qui tam action brought on behalf of the United States, appeals the District Court's order dismissing his claim pursuant to the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733, for failure to state a claim.

**I.**

Between 1996 and 2002, Sanders intermittently worked as a commissioned insurance agent for defendant American-Amicable Life Insurance Company ("American-Amicable"). Sanders alleges that American-Amicable, together with defendant Central National Bank ("Central") (hereafter jointly referred to as "American-Amicable"), violated the FCA by submitting or causing to be submitted false claims to the United States government arising out of defendants' scheme to sell military personnel life insurance in contravention of regulations governing such sales.

According to Sanders, American-Amicable specifically targeted "unsophisticated and young enlisted personnel," for the sale of what is purportedly a "savings plan" that is "in reality an insurance policy sold by American Amicable." App. at 43. If a service member elected to participate, an American-Amicable agent would complete allotment and direct deposit forms to establish direct payment out of the service member's salary through an account at Central to American-Amicable.[1] Sanders' complaint alleges that American-Amicable agents falsified information on each allotment form, such as stating that the allotment was for a savings account rather than an insurance premium, in order to avoid military regulations that limited the use of the allotment system to pay life insurance premiums. The complaint also alleges that American-Amicable sought to circumvent a mandatory seven-day waiting period on allotments for such premiums.[2] Finally, Sanders alleges that, as a result of this scheme, the defendants prepared false claims to be submitted by the military personnel "in an extensive series of

---

[1]The military's allotment system is analogous to direct deposits from a salary in the private sector and allows service members to make payments of salary directly to certain third parties, such as certain family members and creditors.

[2] See 32 C.F.R. Part 50 App. A (2007) ("For personnel in pay grades E-4 and below . . . at least seven calendar days shall elapse between the signing of a life insurance application and the certification of a military pay allotment for any supplemental commercial life insurance.").

3

transactions," App. at 48, thereby causing the United States to suffer damages "in an amount that has yet to be determined but that is expected to be in the millions of dollars." App. at 50.

After investigating Sanders' allegations, the government declined to intervene in June 2006 and Sanders elected to bring the action individually. The government, however, did sue American-Amicable under the Fraud Injunction Statute, 18 U.S.C. § 1345, based on essentially the same conduct at issue in Sanders' complaint. That suit was settled by an agreement by American-Amicable to provide $10 million in compensation to current and former policyholders as well as to accept certain limitations on marketing its products to military personnel.

In this action, American-Amicable moved to dismiss Sanders' qui tam action pursuant to Fed. R. Civ. Pro. 12(b)(6). The District Court granted the motion, holding that Sanders did not plead facts that would, if true, prove the existence of any false "claim"–a prerequisite for liability under all of Sanders' FCA theories–because Sanders failed to "establish any actual or potential economic loss to the federal government" arising out of the defendants' alleged conduct. App. at 18-19 (emphasis deleted).[3]

## II.

As relevant here, the FCA imposes civil penalties and/or treble damages on any person who "knowingly presents, or causes to be presented, to [a federal officer] a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1), "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), or "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. § 3729(a)(3). All of these provisions require, as a threshold matter, that a "claim"

---

[3] We have jurisdiction over the District Court's final order dismissing Sanders' claims pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's dismissal under Fed. R. Civ. Pro. 12(b)(6).

4

be submitted to the government by some party. The term "'claim' includes any request . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested . . . ." 31 U.S.C. § 3729(c).

Relying in part on Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 179 (3d Cir. 2001), the District Court noted that Sanders "does not describe any process through which the United States actually expends federal funds with respect to any fraudulent claims, as opposed to merely depositing . . . a portion of an employee's salary per that employee's direction." App. at 16. Thus, Sanders identified no "claim" against the government, because the "amount of total compensation the United States pays to the employee does not change" as a result of the alleged fraud, App. at 17, and "the Relator cannot establish any actual or potential economic loss to the federal government." App. at 18-19 (emphasis in original).

Sanders contends that the District Court erroneously added an "economic loss test" to the FCA. Sanders correctly notes that a party can be subject to FCA liability (i.e. civil penalties) even where the government suffers no monetary injury. See Hutchins, 253 F.3d at 183 (noting that "recovery under the False Claims Act is not dependent upon the government's sustaining monetary damages") (quoting Varljen v. Cleveland Gear Co., Inc., 250 F.3d 426, 429 (6th Cir. 2001)). This is so, for example, where the government discovers that a claim is false before it makes payment, see Rex Trailer Co. v. United States, 350 U.S. 148, 153 n.5 (1956) (approving imposition of civil penalty under an earlier version of the FCA where the fraud was discovered prior to payment), or where the government in essence passes on the cost of the false claim to a third party, see United States ex rel. Hayes v. CMC Electronics Inc., 297 F. Supp. 2d 734, 737-39 (D.N.J. 2003) (holding that relator stated a claim under FCA where defendant allegedly inflated price of military equipment sold to the federal government, notwithstanding fact that the government subsequently resold the equipment at that inflated price). Although there may be FCA liability even where the government suffers no injury, that does not answer the threshold question

5

whether a false claim has been submitted to the government.

As we stated in Hutchins, the FCA "is only intended to cover instances of fraud 'that might result in financial loss to the Government.'" 253 F.3d at 183 (quoting United States v. Neifert-White Co., 390 U.S. 228, 232 (1968)). Thus, a party makes "false or fraudulent claim[s] for payment or approval" to the government within the meaning of the statute only where such claims "cause or would cause economic loss to the government." Hutchins, 253 F.3d at 179. We held in Hutchins that no claim was made against the government where a FCA relator alleged that a law firm submitted inflated bills to a bankruptcy court because the bills would be paid out of the assets of the bankrupt entity and not from the Federal Treasury. Id. at 183-84.

Similarly, the fraudulent scheme alleged by Sanders did not involve any claim against the government inasmuch as allotment payments are not made on behalf of the United States, but simply are made from the salary of military personnel as they direct. See Department of Defense Financial Management Regulation 7000.14-R, Vol. 7A, Definitions (2008) (defining "allotment" as a "definite portion of the pay and allowances of a person in the Military Service, which is authorized to be paid to a qualified allottee"). It follows that the alleged fraud could not cause the government, as opposed to the defrauded military personnel, to suffer any economic loss.[4] Therefore, the District Court correctly held that no claim was made against the government; as a result, the FCA is inapplicable. See also United States ex rel. Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998) ("[O]nly those actions by the claimant which have the purpose and effect of causing the United States

---

[4] Sanders contends that the alleged fraud did cause the government to suffer economic harm, including the cost of investigating the fraud and reductions in troop morale. Appellant's Brief at 35-37. However, this argument again fails to recognize the distinction between whether a claim was made against the government and whether the government was injured by the alleged fraud. Unless a FCA relator establishes the former, the latter is irrelevant.

to pay out money it is not obligated to pay, or those actions which intentionally deprive the United States of money it is lawfully due, are properly considered 'claims.'").

Sanders attempts to escape this conclusion by arguing that the statutory definition of "claim" in 31 U.S.C. § 3729(c) is satisfied because the government "provide[d]" the requested money directly to the defendants in response to a "request" (i.e. the allotment forms). Nothing in the plain language of § 3729(c) suggests that the federal government "provides" funds when it simply releases the salary of its employees (per their instructions) directly to a third party. Here, it was the defrauded military personnel who furnished or made money available to the defendants–and not the federal government–because it was those personnel who decided to participate in the fraudulent "savings programs."[5]

Finally, Sanders argues that the funds at issue were in fact government property until they were disbursed to the defendants, and therefore the government did provide its own money in response to a request from the defendants. For support, Sanders notes that sovereign immunity bars creditors from attaching or garnishing funds in the Treasury. See Buchanan v. Alexander, 45 U.S. 20, 21 (1846) (holding that creditor could not attach seaman's salary while held by government purser). However, this does not change our conclusion that it was the defrauded military personnel, rather than the government, that "provided" money to the defendants.

In sum, the District Court appropriately dismissed Sanders' claim because he alleged no "claim" against the

---

[5] FCA liability under § 3729(a) clearly extends to parties that cause some third person to submit a false claim to the government. Thus, the problem with Sanders' theory is not that it was military personnel, rather than the defendants directly, that submitted the falsified allotment forms. Instead, the problem is that, notwithstanding the submission of those forms, no "claim" was made to the government's–as opposed to the personnel's–money or property.

7

government's money or property.

## III.

For the above-stated reasons, we will affirm the decision of the District Court.